**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

IN RE:

Gyro-Trac (USA), Inc.,

Debtor(s).

C/A No. 10-01908-DD

Chapter 11

**ORDER AUTHORIZING USE OF CASH COLLATERAL**

THIS MATTER is before the Court on Gyro-Trac (USA), Inc.'s ("Debtor") Amended Motion to Use Cash Collateral ("Motion"). Debtor's motion was initially filed on March 19, 2010 and subsequently amended on March 31, 2010. An objection to Debtor's Motion was filed by Bank of Montreal ("BOM") and a response was filed by Branch Banking and Trust Company ("BB&T"). The Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this contested matter by Fed. R. Bankr. P. 7052 and 9014.

*FINDINGS OF FACT*

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on March 17, 2010. The Debtor is operating its business and managing its properties as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[1] Debtor's business involves manufacturing, sales and servicing of heavy equipment used in the clearing of land and mulching of timber. Daniel Gaudreault, president of the Debtor, developed some of the technology employed in the Debtor's business. Debtor's brushcutters are single purpose, rubber-tracked conveyance with a cutter-head attached in the front. Gyro-Trac Brushcutters were among the first on the market to use a technology that muches trees and other debris into wood chips, thereby reducing the need for costly

---

[1] Further reference to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

1

hauling and waste disposal in land clearing. Debtor's products are specialty products which require specialized skill and training for optimum operation and efficient maintenance for which Debtor and its affiliates are the only resources.

On or about March 22, 2007, the Debtor entered a floor plan financing agreement with BB&T. Pursuant to the floor plan agreement, BB&T agreed to finance the purchase of inventory up to $3.5 million. The security agreement between Debtor and BB&T provides for security in all Debtor's "new land clearing equipment and vehicles" inventory, all the Debtor's accounts, and all proceeds of the inventory.

On or about October 6, 2006, Debtor guaranteed a debt to BOM by a related Canadian corporation known as Gyro Trac West Goast, Inc. ("GTWC"). GTWC is in default of its obligation to BOM. One hundred (100%) percent of the outstanding stock of GTWC is owned by Gyro-Trac, Inc. ("GTI), a Canadian corporation. GTI also owns one hundred (100%) percent of the outstanding stock of the Debtor.[2] All three companies, as well as a recently formed company Gyro-Trac International, Inc. ("GTII"), are owned by or controlled by Daniel Gaudreault. BOM holds a lien on all of the personal property of the Debtor of every kind and nature, including all accounts, equipment, accessions, fixtures, and inventory. BOM acknowledges that its lien on all new inventory of the Debtor is subject only to the security interest of BB&T.

The Court did not approve Debtor's interim use of cash collateral because Debtor failed to offer adequate protection to its secured creditors. At the final hearing on Debtor's use of cash collateral, Debtor presented evidence through testimony of its continuing business operations. The sales of equipment and parts have generated

---

[2] GTWC and GTI are also debtors in chapter 11 proceedings currently before this Court, case umbers 10-01909-dd and 10-01910-dd respectively.

2

revenues used to pay down both secured and unsecured debts.  During the last fiscal year BB&T received payments of its floor plan lien on each piece of new equipment sold totaling $2,508,765. Additionally, over the last fifteen (15) months BB&T was paid interest in the amount of $186,615.  BMO received in excess of $450,000 from the sale of new machinery.  Tuttle Dozer Works received in excess of $480,000 in settlement of litigation with the Debtor.  Between December 1, 2008 and November 30, 2009 the Debtor generated $6,784,625 in gross revenue despite the involuntary bankruptcy and liquidation of Usitech NOV, resulting in the elimination of the Debtor's primary supply line for parts and the manufacturing facility for the Debtor's equipment.

The Debtor and GTII are working with Usitech NOV Industries, the machine portion of Usitech which arose out of Canadian receivership, and getting back to full volume of the Debtor's parts inventory.  Further, GTII has purchased the jigs necessary for the assembly of new equipment and is in the process of purchasing the fixtures and real property necessary to return to the manufacturing of new equipment.

The Debtor's sales director, Wendell DeVries, testified as to the Debtor's current sales leads.  This testimony was supported by the testimony of Cal Coy who works with the Debtor to market Gyro-Trac equipment outside of North America.  At some point prior to the filing of this case, the Debtor's equipment enjoyed a market share as high as sixty (60%) percent in North America.  While the Debtor's sales staff admitted that its future sales are projections until payment is received, they were confident in their ability to produce direct sales with the machines remaining in the Debtor's inventory.  It is custom within the Debtor's industry for purchase contracts to be executed only after

3

everything has been approved by the customer and financial institutions resulting in contracts that are signed only immediately before delivery.

The Debtor filed a disclosure statement and plan of reorganization, both of which the Debtor admits will require amendment, on April 2, 2010.

### *CONCLUSIONS OF LAW*

The Debtor seeks Court authorization of its use of cash collateral consistent with Debtor's proposed budget pursuant to sections 105, 361, and 363 of the Bankruptcy Code. The Bankruptcy Code provides that a debtor-in-possession may not use, sell or lease cash collateral without either (1) the consent of each entity with an interest in cash collateral; or (2) authorization by the court after notice and a hearing. § 363(c)(2). Neither BB&T nor BOM consent to the Debtor's use of cash collateral.

In determining whether to allow the use of cash collateral, courts should consider whether there is a reasonable chance of reorganization. *See In re C.F. Simonin's Sons, Inc.*, 28 B.R. 707 (Bankr. E.D.N.C. 1983). In the early stages of a chapter 11 bankruptcy case, there is a presumption in favor of reorganization unless it is obvious that a debtor cannot reorganize or the debtor has wasted assets. *See In re Greenwood Building Supply, Inc.*, 23 B.R. 720, 722 (Bankr. W.D. Mo. 1982). The party asserting an interest in cash collateral has the burden of proving the validity, priority, or extent of that interest. § 363(o)(2).

Here both BOM and BB&T have met their burden of proving the validity and extent of their interests in cash collateral and the Debtor has admitted their interests. Additionally the Debtor's past sales history, market share within the forestry equipment niche, and available equipment inventory are evidence of the Debtor's reasonable chance

of reorganization. It does, however, appear based upon testimony that sales outside of North America are at a considerable risk to the Debtor because of issues with some foreign letters of credit. Non-payment on any sales outside of North America could jeopardize Debtor's attempts to reorganize. Because the Debtor has a limited amount of new equipment inventory these sales outside North America should be considered outside the ordinary course of the Debtor's business. In light of the presumption in favor of reorganization, the Debtor should be authorized to use cash collateral if both BB&T and BOM can be adequately protected as to their security interests the cash collateral.

The party seeking to use cash collateral has the burden of showing that the interests of creditors secured by that collateral will be adequately protected. § 363(o)(1). Adequate protection does not entitle a creditor to more protection that it obtained as a result of arm's length negotiations. *In re Greenwood Building Supply*, 23 B.R. at 722. A debtor should not be authorized to use cash collateral without making some payments to the secured party merely because it has, at the commencement of the case, a meaningful equity cushion in the collateral. *See Sun Bank/Suncoast v. Earth Lite, Inc. (In re earth Lite, Inc.)*, 9 B.R. 440, 444 (Bankr. M.D. Fl. 1981). A balance must be maintained between a secured creditor's rights in collateral and an unsecured creditor's right to utilize the equity cushion. *See In re McCombs Properties VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal. 1988).

In this case, the Debtor asserts that the value of the forestry equipment and parts when sold by Gyro-Trac as a going concern is substantially greater than the amount outstanding on the BB&T loan. The Debtor contends that based upon its sales history the Debtor will earn significant profits in excess of the liquidation value of the parts

5

inventory and equipment. The Debtor intends to utilize these continued sales to insure the adequate protection of BB&T and BOM.

The Debtor intends to protect the interests of BB&T through the equity cushion in the new machines and by virtue of interest payments. For each GT-25 machine sold by the Debtor, BB&T will receive between $103,000 and $142,000. For each GT-13 sold, BB&T will receive $93,000. The Debtor also proposes a $12,500 monthly interest payment to BB&T.

As a means to adequately protect the interests of BOM, the Debtor proposes to a payment for each machine sold, monthly interest payments, and replacement liens. Since the filing of the Debtor's case, Debtor has received cash in the amount of $64,027.29 from the post-petition sale of parts and $59,165 from pre-petition receivables. Debtor proposes to use this cash to replenish the inventory which can be sold at a 30 percent mark up. The Debtor indicates it will give replacement liens on newly acquired parts inventory to the extent cash collateral is used. Debtor also proposes direct payments to BOM in the amount of $25,000 upon the sale of new GT-25XPs. Upon the sale of GT-13XPs the Debtor proposes to pay BOM $10,000. On collateral not subject to the lien of BB&T that is sold post-petition, the Debtor will pay fifty (50%) percent of the net receipts of such sales to BOM. Finally, the Debtor proposes to pay monthly payments of $4,000 to BOM until the Debtor's Plan of Reorganization is approved.

According to the terms detailed above the interests in cash collateral of both BB&T and BOM are adequately protected.

IT IS THEREFORE ORDERED that the Debtor's use of cash collateral is approved according to the Debtor's budget.

IT IS FURTHER ORDERED that the Debtor is required to file with the Court and provide BB&T and BOM an accounting for its income and use of cash collateral on a weekly basis.

IT IS FURTHER ORDERED that sales outside of North America are considered sales outside the ordinary course of the Debtor's business and will require Court approval. Debtor shall provide three (3) business days notice to BB&T and BOM of such sales and the Court will schedule a hearing on an objection.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**04/07/2010**



US Bankruptcy Court Judge
District of South Carolina

Entered: 04/08/2010